**Guillermo CHARRY, Plaintiff–Appellant,**

**v.**

**STATE OF CALIFORNIA; California Youth Authority; Dan Hoy; John Sullivan; Daniel Boczek; Jacqueline Silva; Clyde McDowell; Sheriff Sherman Block; Nate Garth; Jerry Melnick; County of Los Angeles, a political subdivision of the State of California; and Does I through XX, inclusive, Defendants–Appellees.**

No. 92–55541.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Jan. 18, 1994.

Edward M. Fox, Klass, Helman & Ross, Los Angeles, CA, for plaintiff-appellant.

James J. Petzke, Deputy Atty. Gen., Los Angeles, CA, for defendants-appellees.

Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.

FRANK A. KAUFMAN, Senior District Judge:

Guillermo Charry appeals the district court's grant of summary judgment in favor of defendants with respect to Charry's claim under 42 U.S.C. § 1983 that his equal protection and due process rights were violated when time spent on parole was not credited toward his sentence of confinement, allegedly resulting in Charry serving more time with the California Youth Authority ("CYA") than a similarly situated youthful felon committed to adult custody would have been required to serve. Because we conclude that Charry did not serve any more time under CYA authority than he would have served if committed as an adult, we affirm.

## BACKGROUND

Charry was arrested for robbery in April 1980, when he was sixteen years old. Pursuant to California Welfare & Institutions ("W & I") Code § 707, he was deemed unfit for the juvenile court system and was instead treated as an adult. As a result of a plea bargain, Charry plead guilty and was convicted of armed robbery in Los Angeles County Superior Court on October 29, 1980. On that date, he received the maximum sentence, i.e., five years for robbery and one additional year for possession of a firearm, was committed to the CYA pursuant to W & I Code § 1731.5, and received 221 days of credit towards his sentence for time which he had already served awaiting sentencing. Beginning on June 16, 1982, Charry was released on parole for 14 months. Subsequently, that parole was revoked when Charry violated parole conditions. Charry did not receive credit toward his sentence for the time which he had spent on parole.

On August 13, 1987, Charry was ordered released pursuant to a state court writ of habeas corpus.[1] The CYA subsequently put a "hold" on Charry and refused to release him until August 20, 1987. Charry then filed a suit pursuant to 42 U.S.C. § 1983 in July of 1988 against defendants who include certain employees of the CYA. The latter are sued in their official capacities. Defendants filed a summary judgment motion with regard to all

* Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

1. That habeas order was apparently issued without any opinion or explanation of record. In that context, neither party contends that the habeas order forecloses or affects the determination of the issues presented in the within appeal. Accordingly, we proceed herein as if the habeas writ had not been issued.

of plaintiff's claims, but were successful only as to the sentencing credit claim referred to *supra.* Charry's remaining claims were tried to a jury which decided in favor of Charry. Charry now appeals the partial granting of the summary judgment motion with regard to the sentence-credit issue.

### STANDARD OF REVIEW

▇ This court reviews *de novo* a district court's grant of summary judgment. *Barlow v. Ground,* 943 F.2d 1132, 1134 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir. 1986). Summary judgment will be upheld if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This court will reverse a grant of summary judgment if, viewing the evidence in the light most favorable to the non-movant, there are genuine issues of material fact or if the district court erroneously applied the relevant law. *Barlow,* 943 F.2d at 1134. In the within appeal there are no disputed issues of material fact, nor for the reasons set forth *infra,* did the district court commit any error of law.

### ANALYSIS

Charry contends that he served more time with the CYA than a similarly situated adult could have served and that as a result, his equal protection and due process rights under the 14th Amendment were violated. Charry asserts that he spent almost seven years under CYA jurisdiction, rather than only six years pursuant to his six-year sentence; whereas a similarly situated adult would have been entitled to be free from any form of state control after six years. Further, Charry states that an adult with the same six-year sentence (minus the 221 days of credit) would have been credited for time spent on parole and would therefore have been released sometime in April of 1986 rather than in August of 1987. In response, the State of California states that Charry actual-

ly served *less* time than a similarly situated youthful felon committed as an adult could have been required to serve and that neither Charry nor a similarly situated adult would be entitled to any credit for time served on parole.

▇ As a general principle under California law, youthful misdemeanants and felons who are prosecuted as adults may not constitutionally be held subject to the Youth Authority's control for a term which exceeds the maximum sentence which an adult could have received. *People v. Olivas,* 17 Cal.3d 236, 131 Cal.Rptr. 55, 69, 551 P.2d 375, 389 (1976) (misdemeanants). In *People v. Sandoval,* 70 Cal.App.3d 73, 138 Cal.Rptr. 609, 618 (1977), that principle was extended to apply to youthful felons. "The language 'subject to the control of the Youth Authority' as used in *Olivas* includes the restraints imposed while the youth is on parole." *People v. Franklin,* 102 Cal.App.3d 250, 162 Cal.Rptr. 284, 286 (1980). Following *Olivas* and *Sandoval,* California legislators enacted those principles into legislation by providing that youthful offenders "*may not be held in physical confinement* for a total period of time in excess of the *maximum period of imprisonment* which could be imposed upon an adult convicted of the offense or offenses[.]" Cal. Welf. & Inst.Code § 1766(b) (emphasis added).[2] *See also In re John H.,* 3 Cal.App.4th 1109, 6 Cal.Rptr.2d 25, 26 (1992) ("The CYA may not *confine* a juvenile longer than the period for which an adult could be *imprisoned* for the same offenses which the juvenile committed." (emphasis added)).

▇ Charry points to the nearly seven years during which he was subject to the CYA's jurisdiction (from October 29, 1980 to August 20, 1987) in connection with his six-year sentence, and contends that an adult serving such a six-year sentence would have been discharged from the jurisdiction of the California Department of Corrections after six years. However, the applicable California statutory provisions governing such adult sentences provide to the contrary.

---

2. In any event, regardless of their sentence, youthful felons must be discharged from CYA authority when they turn 25; for Charry this date

was March 3, 1989, the last date the CYA asserted that it had authority over him. Cal.Welf. & Inst.Code § 1771.

If he had been sentenced as an adult, Charry could have been sentenced not only to a six year prison term, but in addition, to a three year mandatory parole period after his sentence of confinement ended. Cal.Penal Code § 3000. In addition, if such a parole term had been imposed and if Charry had violated the conditions of parole, he could have faced up to one year of recommitment. Cal.Penal Code § 3057. In no case could Charry have been retained for longer than four years from the date of his initial parole. Cal.Penal Code § 3000(d). Thus, if treated as an adult, Charry could have been subject to the California Department of Correction's control for up to 10 years (including the extra year of recommitment for violating parole). Treating Charry as a juvenile, the CYA asserted that it could exercise control until he turned 25 on March 3, 1989. This is less than the nine or ten years from October 29, 1980, which Charry could have faced if sentenced as an adult. Moreover, Charry actually served his sentence only from October 1980 until August 1987 when he was released entirely from CYA control. Thus, he did not serve a longer sentence than he could have served if he had been sentenced as an adult.

Charry further asserts, however, that under his six-year sentence, he could only be required to serve that maximum period of time in prison *and* on parole. That argument is foreclosed by *Franklin*, in which it was determined that a youthful offender could be subjected to the CYA's parole jurisdiction after serving the full term of a sentence of physical confinement, and that a committing court, when sentencing a youthful offender, need not speak of the maximum period of CYA control, but rather, could comply with *Olivas* by specifying "the term of imprisonment to which the defendant would have been sentenced to state prison for his offense." 162 Cal.Rptr. at 286. As for the parole period, which is determined later, the court stated:

> The Youthful Offender Parole Board will look to [penal code section 3000] as setting a limit beyond which the youth may not be held under the *Olivas* doctrine.... The

time defendant is on parole will be determined by the Parole Board within the applicable statutory and constitutional time limits. The proper administrative application of those limits will ensure that defendant will not be held under the control of the Youth Authority beyond the maximum period of control which could have resulted from a prison sentence.

*Id.*

■ As *Franklin* makes clear, to comply with *Olivas*, a youthful offender's total time subject to CYA custody (in prison and thereafter on parole or probation) may not exceed an adult's total time subject to custody (in prison or otherwise subject to control as during a period of parole or probation). Charry, in contrast, seems to argue that a youthful offender's total time in custody and thereafter subject to CYA control should not exceed an adult's prison term of confinement. That contention is not meritorious. In that regard, it is also to be noted that *Franklin* comports with several California statutory provisions, which provide that confinement time and parole time are separate forms of control for *Olivas* purposes. For example, as noted previously, the statutory provision which incorporates the holding of *Olivas* provides that youthful offenders may not be held in physical custody longer than adults. Cal. Welf. & Inst.Code § 1766. That same provision, however, states that that limitation does not constrain the power of the CYA to retain a youthful offender on parole after he has served his term of confinement.[3] Another state law permits a committing court to commit a minor to CYA authority pursuant to Cal.Welf. & Inst.Code § 1731.5, for a term of imprisonment "determined as provided by [penal code] section 1170 and 1170.1." California Rules of Court 453. As to adult defendants, Cal.Penal Code § 3000 provides that such defendants, upon whom determinate sentences have been imposed, are subject to a mandatory parole subsequent to confinement.

---

**3.** "Nothing in this subdivision limits the power of the board to retain the minor or the young adult

on parole status for the period permitted...."

When Charry was ordered to serve a six year sentence, that sentence did not include any possible parole term to be served after the imposed period of confinement. Similarly, an adult offender receiving a six-year sentence of confinement would be subject to a term of parole above and beyond that six year period. Accordingly, California statutory law has not created any liberty interest in a person such as Charry which entitles him to be released totally from CYA control after six years. Moreover, since Charry served less than seven years under CYA control, as opposed to the ten years he could have served under state control if sentenced as an adult, he cannot demonstrate that he was subjected to a longer period of control than if he had been treated as an adult. Thus, Charry's equal protection argument fails.

■ Charry also contends that his statutory and constitutional rights were violated when he did not receive credit against the six-year sentence for the time which he spent on parole before revocation. Pursuant to Cal.Penal Code § 2900.5, which applies to youthful felons as a result of the decision in *Sandoval*, any time spent in presentence custody is credited towards an offender's sentence. The sentencing court fulfilled its obligations under that section by granting Charry 221 days of credit for the time which he served awaiting sentencing. Moreover, § 2900.5 applies to *presentence* custody, not to time spent under custody once a sentence has commenced. Thus, none of Charry's statutory rights were violated by non-credit for time spent on parole.

Charry, however, also asserts a constitutional, equal protection violation, contending that adult offenders receive credit toward their sentences for time which they have spent on parole subsequently revoked. Charry cites no support for this proposition. Nor has this court found any such support in any California statute or in the caselaw. Under California statutory law, an adult prisoner cannot be paroled until he completes his entire jail term. Cal.Penal Code § 3000. Thus, once an adult is paroled, he does not

receive any credit against his jail term because that term has already been fully served. In contrast, a minor committed to the CYA can be paroled at the discretion of the CYA at any time during his sentence. Cal.Welf. & Inst.Code § 1766.

■ Further, "custody" for § 2900.5 purposes excludes the parole period. Although "'custody' is to be broadly defined," *People v. Reinertson*, 178 Cal.App.3d 320, 223 Cal. Rptr. 670, 674 (1986), some sort of physical restraint, more restrictive than home detention, by the State is required.

> The courts which have considered the question generally focus on such factors as the extent freedom of movement is restricted, regulations governing visitation, rules regarding personal appearance, and the rigidity of the program's daily schedule.... [T]he concept of custody generally connotes a facility rather than a home. It includes some aspect of regulation of behavior. It also includes supervision in a structured life style.

*Id.* at 326, 223 Cal.Rptr. 670. *See also In re Taylor*, 132 Cal.App.3d 260, 183 Cal.Rptr. 34 (1982) (no credit for time spent as California Rehabilitation Center outpatient); *People v. Schnaible*, 165 Cal.App.3d 275, 211 Cal.Rptr. 530 (1985) (no credit for time spent on outpatient basis in drug rehabilitation program as a condition of probation). Like the defendants in the cases cited above, a person on parole usually suffers little physical restraint and has conditional freedom.[4] Therefore, we conclude that parole does not qualify as "custody" as envisioned by the California legislature. Because Charry has not been denied any credit which he would have received if committed as an adult, his equal protection argument fails.

AFFIRMED.

---

4. *Compare In re Mikeal D.*, 141 Cal.App.3d 710, 190 Cal.Rptr. 602 (1983) (time spent in hospitals and in an outreach program is not custody); *with In re Harm R.*, 88 Cal.App.3d 438, 152 Cal.Rptr. 167 (1979) (time spent in juvenile hall is custody).