Filed 3/18/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES WEEKS,<br><br>    Defendant and Appellant. | E057282<br><br>(Super.Ct.No. RIF1100824)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed in part; reversed in part.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, part A.

1

A jury found defendant and appellant, Charles Weeks, guilty of (1) possessing marijuana in prison (Pen. Code, § 4573.6),[1] and (2) possessing a weapon in prison (§ 4502, subd. (a)).  The trial court found true the allegations defendant suffered (1) a prior strike conviction (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)); and (2) five prior convictions for which he served prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to prison for a term of 13 years.

Defendant raises two contentions on appeal.  First, defendant asserts substantial evidence does not support the findings that he knowingly possessed marijuana and a weapon.  Second, defendant contends the court's finding concerning his fifth prison prior (§ 667.5, subd.(b)) is not supported by the evidence because defendant was still serving his sentence for the prior offense at the time the current crimes were committed.  We reverse the trial court's finding on the fifth prison prior (§ 667.5, subd. (b)), but otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.      PROSECUTION'S CASE

On January 27, 2011, defendant was an inmate at the California Rehabilitation Center in Norco, in dorm 303.  Each dorm at the prison houses approximately 100 inmates.  Each inmate is assigned a bed and a locker; the lockers are near the beds.  State policy is that each inmate is given a combination lock for his locker when he arrives at the prison.  The dorm officer is supposed to record the lock's serial number

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

and the inmate is supposed to sign for the lock, so prison officials can track the locks. However, in January 2011, Norco correctional officers did not follow the state policies regarding issuing locks. Instead, the officers gave inmates locks upon arrival, but did not record any information about the locks.

There have been instances of lock shortages. When there are not enough locks, new inmates receive locks from inmates who are being released. New inmates typically did not have to wait long for a lock. It was also possible for some inmates to have multiple locks, while others did not have a lock at all, due to inmates who are being released giving their locks to other inmates. Correctional Officer Lynch recalled defendant being at the prison since 2008.

On January 27, 2011, Officer Lynch and other correctional officers searched dorm 303. Before the search, officers watched the inmates as they exited the dorm, so no one could hide or discard items. After the inmates exited the dorm, the officers conducted the search. During the inmate exiting process, one officer was stationed by the restrooms to stop inmates from discarding items in that area. Another officer was near the front of the dorm, while another was in the back. Officer Lynch went to the left side of the dorm. In total there were four officers in the dorm.

Approximately half the inmates in the dorm had to pass by defendant's living area when exiting. Officer Lynch did not notice anyone move toward defendant's locker while the inmates were exiting the dorm; however, the exiting process is "disorderly"—the inmates do not move in a single file line. Some of the lockers were

3

located near the walkways, while others were against the walls. Defendant's locker was against the wall.

While conducting the search, Officer Lynch did not notice any lockers that were missing locks. Defendant's locker was locked with a lock. Officer Lynch opened the lock. Officer Lynch searched defendant's locker. "[O]n the top left shelf of the locker tucked away between the metal of the locker and personal belongings," Officer Lynch found a "small bindle" of marijuana wrapped in a latex glove. The marijuana was not in plain view, but Officer Lynch did not have to move many items to find it. The marijuana weighed 1.3 grams.

Officer Lynch also found a weapon in defendant's locker. The weapon was a sharp nail between two pieces of wood that were taped together. A magnet was underneath the tape. Officer Lynch found the weapon "right underneath the lip [of the locker] out of plain sight." Also in the locker, Officer Lynch found letters addressed to defendant and medication with defendant's name on the label. Fingerprints were not taken from the lock on defendant's locker. There was not any paperwork reflecting defendant was issued a lock. Officer Lynch asked defendant to take a drug test after finding the marijuana in defendant's locker, but defendant refused.

B.    DEFENSE CASE

Correctional Officer Rendon has found inmates will dispose of contraband in the unsecured lockers of other inmates and then lock it, so only the contraband-owning inmate can retrieve the contraband. Officer Rendon believed it was rare for an inmate

4

not to be issued a lock upon arrival at the prison. Officer Rendon had never heard of an inmate being at the prison for two years and not having a lock.

Defendant testified at trial. Defendant arrived at the Norco prison in 2007. Defendant did not have a lock for his locker. Defendant asked for a lock, but never received one. At times, defendant had items stolen from his locker; however, he had never before had items placed in his locker. Defendant denied the marijuana and weapon belonged to him. Defendant explained he had eight months left on his prison sentence so he would not have jeopardized his release date by possessing contraband.

Defendant said Officer Lynch did not ask him to take a drug test. Rather, Officer Houlton told defendant he did not have to take a drug test because he had taken one the day before the search. Defendant explained that he would have tested positive for marijuana, so there was no reason for him taking the test again. Defendant said when he took the drug test the day before the search he "told them [he] was dirty." Defendant admitted smoking marijuana "[e]very chance [he] get[s]."

## DISCUSSION

### A. POSSESSION

Defendant contends substantial evidence does not support the findings that he knowingly possessed the marijuana and weapon. We disagree.

"'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of

5

review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis what[so]ever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 4573.6, subdivision (a), requires a person "knowingly" possess marijuana in prison, in order for a crime to have been committed. To be convicted of possessing a weapon in prison (§ 4502, subd. (a)), it must be proven the defendant knew of the prohibited object in his possession. (*People v. Strunk* (1995) 31 Cal.App.4th 265, 272.)

The evidence supporting a finding of knowing possession of marijuana is as follows: (1) defendant admitted smoking marijuana; (2) the marijuana was not in plain view; (3) the locker was locked; (4) Officer Rendon never heard of an inmate being at the prison for two years and not having a lock; (5) defendant arrived at the prison in 2007; and (6) the crime took place in 2011. This evidence supports a finding that defendant knowingly possessed marijuana because defendant had a reason to possess

6

the marijuana, i.e., he smoked it, and it can logically be inferred that the lock on defendant's locker belonged to him, because it is not reasonable to believe defendant was at the prison for over three years without a lock for his locker. Since it is reasonable to conclude defendant had a lock, it is logical to conclude the locker was secured and not capable of having items "planted" in it. Thus, the marijuana belonged to defendant and he knowingly possessed it.

The evidence also supports a finding that defendant knowingly possessed the weapon. As set forth *ante*, it is reasonable to infer defendant had a lock after more than three years at the prison. Therefore, it is reasonable to infer the items in the locker belonged to defendant because the locker was secured. Further, a trier of fact could deduce another person would not have had an opportunity to place the weapon inside the locker since someone would have needed to (1) walk to the locker by the wall; (2) place the weapon inside, in a manner that made it not visible in plain view; (3) lock the locker; and (4) not be detected by the four officers watching the room. Thus, a reasonable trier of fact could deduce only defendant had the opportunity to place the weapon in the locker. If the weapon was not planted, it is reasonable to infer it belonged to defendant and he knowingly possessed it. Thus, we conclude substantial evidence supports the findings defendant knowingly possessed the marijuana and weapon.

Defendant asserts his convictions are not supported by substantial evidence because (1) there are no prison records establishing defendant was issued a lock, (2) inmates exited the dorm in a disorderly manner, thus providing an opportunity for

someone to place the contraband in defendant's locker, and (3) both items were at the top of the locker, reflecting they could have been tossed inside. Defendant aptly points out that there is evidence supporting his theory of the case, i.e., that the contraband was planted. However, this court must view the evidence in the light most favorable to the prosecution, and we cannot reweigh the evidence. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13.) Thus, the question is not whether there is evidence supporting defendant's theory of the case, the question is whether there is credible evidence supporting the prosecution's theory of the case. As explained *ante*, there is reasonable and credible evidence from which the jury could find defendant knowingly possessed the marijuana and weapon. Accordingly, we find defendant's argument to be unpersuasive.

      B.     <u>PRISON PRIOR</u>

         1.     *PROCEDURAL HISTORY*

At the time defendant committed the crimes in the instant case, he was serving a prison sentence for crimes committed in 2006. At the sentencing hearing in the current case, the trial court found defendant's 2006 offense constituted a prison prior (§ 667.5, subd. (b)). The trial court imposed a consecutive one-year prison term for the prison prior. The crimes in the instant case were committed on January 27, 2011. Defendant testified that he was supposed to be released from prison in September 2011. Defendant explained that, prior to trial in the instant case, he was "in the hole," in Chino, and he went "from the hole to Riverside County jail." Defendant's sentencing hearing took place on October 5, 2012.

8

2. *ANALYSIS*

Defendant contends the trial court erred by using his 2006 offense as the basis for a prison prior (§ 667.5, subd. (b)) because defendant had not completed his term of imprisonment at the time he committed the current offenses, i.e., January 27, 2011. The People assert the trial court properly used the 2006 offense as the basis for a prison prior because defendant had completed his term of imprisonment at the time the trial court found the prison prior to be true and imposed sentence, i.e., October 5, 2012. Alternatively, the People assert the prison prior could properly be imposed because defendant will necessarily have to finish serving the sentence for the 2006 offense before he begins serving his sentence for the prison prior in this case. Thus, the issue confronting us is: What is the "trigger" date for a prison prior? We conclude the relevant date is the date the new offense was committed.

"'In construing any statute, we first look to its language. [Citation.] "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." [Citation.] "If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" [Citation.]' [Citation.] A statute '"must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers,

9

practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity."' [Citation.] "'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible."' [Citation.]" (*People v. Zambia* (2011) 51 Cal.4th 965, 972.)

Former section 667.5, subdivision (b),[2] provides in relevant part, "the court shall impose a one-year term for each prior separate prison term served for any felony." Section 667.5, subdivision (g) defines a "prior separate prison term" as "a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."

It is unclear from the plain language of subdivisions (b) and (g) what the trigger date of the statute should be because the subdivisions do not provide any information about timing other than a "completed period of prison incarceration." It is unclear from this language exactly when the term must be "completed." It could be by the time the new offense is committed, it could be by the time a conviction is rendered for the new offense, or it could be by the time the prior is found true and sentence is pronounced in the new case.

_____

[2] We analyze the version of section 667.5 that was effective from November 2006 through September 2011.

The Legislature's timing intention becomes clearer when reading section 667.5, subdivision (k), which provides, "Notwithstanding subdivisions (d) and (g) or any other provision of law, where one of the new offenses is committed while the defendant is temporarily removed from prison pursuant to Section 2690 or while the defendant is transferred to a community facility pursuant to Section 3416, 6253, or 6263, or while the defendant is on furlough pursuant to Section 6254, the defendant shall be subject to the full enhancements provided for in this section."

The plain language of subdivision (k) reflects that, despite subdivision (g) requiring a defendant complete his sentence, a defendant who is serving time in an auxiliary prison program can be subject to a prison prior if he commits the new crime while in the auxiliary program. The language of subdivision (k) reflects a belief that subdivision (g) (requiring a completed sentence) would not typically apply if a defendant is involved in a prison auxiliary program on the date the new offense is committed; hence the need for the explicit inclusion of these defendants.

The critical portion of subdivision (k) is the language "where one of the new offenses is committed while . . . ." This plain language reflects the Legislature is concerned with the date the new crime is committed and defendant's situation/incarceration on that date. Accordingly, it can be logically inferred from subdivision (k) that the critical date for subdivisions (b) and (g) is the date "where one of the new offenses is committed." (§ 667.5, subd. (k).)

Accordingly, the trigger date for section 667.5, subdivision (b), is the date the new offense is committed. Defendant had not completed his prison term for the 2006

11

offense at the time the new offenses took place.  Thus, the trial court erred by finding the 2006 offense constituted a prison prior.  (§ 667.5, subd. (b).)  We reverse the trial court's finding on the fifth prison prior.  (§ 667.5, subd. (b).)[3]

The People raise a policy argument.[4]  The People assert section 667.5 is intended to punish recidivist offenders, and it is illogical to treat incarcerated recidivists more leniently than out-of-custody recidivists.  The People's reasoning is logical, but we do not write the law.  We interpret the laws written by the Legislature.  In this case, subdivision (k) specifically references subdivision (g) and is plainly concerned with the date the "new offense[] is committed."  We cannot ignore this plain language in section 667.5.  Therefore, the People's policy argument would be better addressed to the Legislature since we are bound by this plain language.  (See *People v. Rathert* (2000) 24 Cal.4th 200, 207-208 [fairness argument that ignores the actual language of the statute is better addressed to the Legislature].)

---

[3] The current version of section 667.5, in effect at the time of defendant's sentencing hearing, includes the same language in subdivision (k):  "Notwithstanding subdivisions (d) and (g) or any other provision of law, *where one of the new offenses is committed while* the defendant is temporarily removed . . . ."  (Italics added.)  Thus, the reasoning applied in this opinion is not dependent on the former version of the statute.  The reasoning would also apply if the current version of the statute were analyzed.

[4] Prior to oral argument in this case, this court issued a tentative opinion reflecting the foregoing plain language analysis.  At oral argument, the People conceded this court's plain language analysis is correct.  We address the People's policy assertion, which was raised in the People's brief, only for the sake of thoroughness.

## DISPOSITION

The trial court's finding on defendant's fifth prior offense (conviction date May 30, 2007, in the County of Los Angeles) is reversed as it relates to section 667.5, subdivision (b). The trial court is directed to issue an amended abstract of judgment (1) without a fifth prison prior (§ 667.5, subd. (b)), and (2) reflecting defendant's total prison term is 12 years. The trial court is directed to forward the amended abstract of judgment to the appropriate agencies. In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER
                                                                                    J.

We concur:


RICHLI
                    Acting P. J.


KING
                    J.

13