Filed 3/14/16

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRIS KENNETH HUTTON,<br><br>    Defendant and Appellant. | F068887<br><br>(Super. Ct. No. BF150516A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Frank J. Torrano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Robert Gezi and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 1.

# INTRODUCTION

As a result of the Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 1), numerous offenses previously punishable by specified terms in state prison are now punishable by serving that same term in local custody at the county jail. (*People v. Vega* (2014) 222 Cal.App.4th 1374, 1379.) In this case, we consider what effect serving a term in the county jail rather than in prison, and being released on "sheriff's parole" instead of regular prison parole, has on entitlement to presentence credits and to the use of the jail commitment as a "prison prior." We conclude the location of a defendant's service of his or her felony sentence makes no significant difference on how these issues should be analyzed and resolved.

In 2013, defendant Chris Kenneth Hutton received a felony conviction in case No. BF147747A (case BF147747A) and was sentenced to a two-year term in county jail to be followed by two years of mandatory supervision. Within months after he was sentenced, he was released from custody on sheriff's parole. He thereafter was arrested and convicted by a jury on a charge of receiving stolen property in the instant case. Among other alleged prison priors, the trial court found true a prior for the 2013 conviction in case BF147747A. Adopting the recommendations of the probation report, the court denied defendant presentence custody credits, explaining defendant was still serving the custodial portion of his sentence in case BF147747A with a scheduled release date of November 29, 2014. The court, however, also imposed a one-year enhancement for the prison prior in case BF147747A. In his appeal, defendant argues he was out of custody at the time of his arrest and is entitled to presentence custody credits. Alternatively, if he was in custody when arrested, he argues it was error to find true the prior prison term allegation in case BF147747A. In the published portion of this opinion, we agree defendant is entitled to presentence custody credits, but also find the court did not err by finding true and imposing an enhancement on the prison prior pertaining to his incarceration in case BF147747A.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted defendant of receipt of stolen property, a vehicle (Pen. Code, § 496d, subd. (a)).[1] In addition, the court found true enhancement allegations defendant had served four prior prison terms within the meaning of section 667.5, subdivision (b).

Defendant was sentenced to an aggregate prison term of five years: three years for the offense, and one year each for two prior prison terms. This sentence was ordered to run concurrent with case BF147747A. The court struck two of defendant's other prior prison terms and denied any presentence credits.

### The Prosecution

At approximately 5:00 p.m. on August 27, 2013, Kern County Sheriff's Deputy Jason Nelson was on patrol near the intersection of Ming Avenue and South Union Avenue in Kern County when he began following a gold 1994 Honda Accord. He ran the vehicle's license plate number and discovered the vehicle had been reported stolen to the Bakersfield Police Department.

Nelson initiated a traffic stop of the Honda and placed the driver, defendant, under arrest. He found a shaved key either inside the vehicle or on defendant's person. Nelson turned over custody of defendant and the shaved key to Officer Scott Roberts of the Bakersfield Police Department.

Roberts inspected the Honda and noticed it was running without keys in the ignition, a condition which typically indicates a vehicle has been stolen. Roberts asked defendant why he was driving a stolen vehicle. Defendant told Roberts "[he] borrowed [the vehicle] from a friend," but refused to identify his friend because he did not "want to incriminate anyone."

The registered owner of the Honda, LaShane Williams, arrived on scene and took possession of the vehicle. Williams stated the vehicle had gone missing from the driveway of her residence on Ming Avenue on the evening of August 22, 2013. She

---

[1]All undefined statutory references are to the Penal Code unless otherwise indicated.

reported it stolen to police that evening, and explained neither she nor her husband Dennis Williams, the co-owner of the vehicle, gave anyone permission to use it.

*The Defense*

Defendant testified in his own defense at trial. On the evening of August 26, 2013, his girlfriend, Jennifer Barrom, gave him a ride home from work because his truck was being repaired.

As they pulled into a gas station to refuel, defendant noticed a gold Honda Accord with a for sale sign on its dashboard. When he asked the gas station cashier what he knew about the Honda, a man standing behind him answered the vehicle was his for $1,200.

The man identified himself as Dennis and explained the car belonged to his girlfriend, who needed the money for bail. Defendant inspected the Honda and concluded the offer was "a hell of a deal." Dennis told defendant the vehicle was smogged, registered, and had all necessary DMV paperwork.

Defendant negotiated a deal with Dennis to purchase the Honda for $1,000. He paid Dennis $600 up front and promised to pay the remaining $400 the following Friday. Both men executed a handwritten bill of sale, prepared by Dennis, as well as a vehicle/vessel transfer and reassignment form. Dennis gave defendant a key to the Honda and defendant drove it home.

The next day, defendant was pulled over while driving home from work. When Nelson asked defendant why he was driving a stolen vehicle, he responded he either "just got the car or [he] borrowed the car." Defendant testified he told Nelson he borrowed the vehicle because when he initially purchased it, he and Barrom agreed it would be hers, but he would use it until his truck was repaired. In his mind, the vehicle belonged to Barrom.

Defendant claims when he discovered the Honda was stolen, he did not want to implicate his girlfriend or the man who sold him the car. He realized the reason he got

4.

such "a sweet deal on the car" was because it was stolen. Defendant claimed he did not notice Dennis gave him a shaved key, nor did he notice the vehicle/vessel transfer and reassignment form listed the name "Dennis Williams" on the typewritten portion of the form, but "Dinnis Willams" appeared in the handwritten portions of the form.

***The Prison Priors***

On December 5, 2013, in a bifurcated proceeding, the court found true four prior prison term enhancements within the meaning of section 667.5, subdivision (b). In 2000, defendant was convicted of driving under the influence causing bodily injury (Veh. Code, §§ 23550.5, 23153, subd. (a)); in 2002, he was convicted of driving under the influence with a prior felony conviction (Veh. Code, § 23153, subd. (a)); in 2010, defendant received a felony conviction for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); and in 2013, in case BF147747A, he was convicted of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and driving with a suspended or revoked license (Veh. Code, § 14601.1, subd. (a)).

At sentencing, the court struck defendant's 2000 and 2002 priors, finding the prior convictions too remote in time in relation to the current offense and explaining defendant had demonstrated prospects of becoming a law-abiding citizen.

Defendant makes the following claims on appeal: (1) the trial court prejudicially erred in failing to timely respond to the jury's request for a readback of defendant's testimony during deliberations; (2) he was improperly denied presentence custody credits; and, (3) defendant's 2013 conviction does not qualify as a prison prior within the meaning of section 667.5, subdivision (b). We agree with defendant's second claim and order the judgment modified. We affirm the judgment in all other respects.

## DISCUSSION

**1.    The Jury's Request for a Readback of Defendant's Testimony***

Defendant first argues the trial court violated section 1138 by failing to timely respond to the jury's request for a readback of testimony.  Defendant asserts his conviction should be reversed as a result of the court's prejudicial error.  We find no violation of section 1138 and, therefore, reject defendant's argument.

### *The Proceedings*

At 9:15 a.m. on December 5, 2013, the prosecution delivered closing arguments in defendant's case and the trial judge gave pre-deliberation instructions to the jury.  The court advised the jurors to send a signed note to the court through the bailiff if they had any requests.  The trial judge explained he would confer with counsel before responding and because it may take some time, advised the jurors to continue with deliberations while they waited.

If the jury had a request for a readback of testimony, it was instructed to send a note identifying the witness and the portion of testimony it wanted to hear.  The court reporter would prepare a readback, compiling a transcript of the relevant testimony, the judge would go over the transcript with the attorneys, and the bailiff would deliver it to the jury.

At 9:45 a.m., the jury began deliberations.

At 1:54 p.m., the jury wrote a note to the court, stating, "We request a read-back of testimony of Chris Hutton, specific to the defendant's response when asked why he was driving a stolen vehicle."[2]

At 2:41 p.m., the court and counsel discussed the jury's request.

---

*See footnote, *ante*, page 1.

[2]During trial, defendant had testified he told Nelson he borrowed the vehicle because when he initially purchased it, he and Barrom agreed the Honda would belong to her, but he would borrow the vehicle until his truck was repaired.

6.

At 3:10 p.m., before the readback could be completed, the jury notified the court it had reached a verdict. The court addressed the panel after they returned to the courtroom. The trial judge explained the court reporter was temporarily detained in another proceeding that had to be completed before she could prepare the readback. The readback was completed and was in the process of being delivered to the jury when the court received the jury's note indicating it had reached a verdict.

The jury found defendant guilty. Each juror was polled to confirm the verdict and the panel was dismissed.

*Analysis*

Jurors have a statutory right to rehear witness testimony and jury instructions upon request during deliberations. (§ 1138.) A trial court's outright refusal to prepare a readback of witness testimony in violation of section 1138 warrants reversal of a conviction where the defendant can show prejudice as a result thereof. (*People v. Kageler* (1973) 32 Cal.App.3d 738, 746.)

Case law distinguishes circumstances where the jury reaches a verdict before a readback request can be prepared, from a trial court's outright refusal to reread requested testimony. (*People v. Litteral* (1978) 79 Cal.App.3d 790, 794-795.) Where the court has outright refused a jury's request for a readback of testimony, a violation of section 1138 will generally be found. (See *People v. Butler* (1975) 47 Cal.App.3d 273 [reversible error where court denied jury's request for rereading of testimony of five witnesses, advising jury to resume deliberations and "give it a good try"]; *People v. Litteral*, *supra*, at p. 796 [court committed prejudicial error by instructing jury to "rely on your memories" in response to jury's request for readback].)

The court here did not deny the jury's request for a rereading, it was simply unable to respond to the jury's request before it reached a verdict. Accordingly, defendant's case is analogous to a line of cases where no violation of section 1138 was found to have occurred. (*People v. Gonzales* (1968) 68 Cal.2d 467, 472 [court did not err in receiving

jury's verdict 15 minutes after jury was advised its request for readback would not be prepared until following morning]; *People v. Warren* (1900) 130 Cal. 678, 682 [no error where jury was advised its request for a rereading of testimony would not be prepared until 9:00 a.m. the following day, but jury reached a verdict a few minutes before 9:00 a.m.]; *People v. Slaughter* (1917) 33 Cal.App. 365, 380 [§ 1138 was not violated where upon being advised a readback would take several days to prepare, jury reached a verdict without it].)

The jury here was fully apprised it would take time for the court to respond to its request. Considering the brief delay at issue, the panel could not have reasonably concluded its request had been refused. We do not read *Gonzales*, *Warren*, or *Slaughter* to compel trial courts to notify the jury its request has been received, nor was such notice necessary here. The jury reached a verdict only one hour and 16 minutes after its request for a readback. This short length of time suggests rather than there being a disagreement among jurors about defendant's testimony, the jury only wanted the testimony reread. In forgoing the readback, it can be reasonably inferred the panel concluded it could agree upon a verdict without having the testimony read.

Defendant also argues the court erred in failing to apprise jurors they could stop deliberations until their readback was prepared. Pursuant to CALCRIM No. 3550, the court advised the jurors they *should* continue with deliberations but it did not *require* them to do so.

In addition, the case defendant cites in support of his argument, *People v. Litteral*, *supra*, 79 Cal.App.3d 790, is readily distinguishable from the instant case. In *Litteral*, the First Appellate District found reversible error where the trial court directed the jury to continue deliberations after the jury informed the court it was deadlocked and after the trial court outright refused their request for a rereading of testimony. (*Id.* at p. 795.) Based on these circumstances, the *Litteral* court properly characterized the trial court's directive to the jury to continue deliberations as coercive. (*Id.* at pp. 795-796.)

8.

In the instant case, there is no indication the jury was deadlocked and, as previously set forth, the trial court did not deny the jury's request for a readback of testimony. Unlike *Litteral*, there is no evidence of jury coercion here.

Lastly, defendant contends the court's untimely response to the jury's request resulted in prejudice because it potentially: (1) denied some jurors who may have credited defendant's version of events the opportunity to reread critical testimony; (2) led jurors to conclude defendant was untruthful in all of his testimony, gravely prejudicing him; and (3) left jurors to rely on inferior foundations for their decision-making process, their notes. Defendant failed to provide any evidence to support the foregoing assertions and essentially asks this court to accept his claims based upon speculation. Therefore, even if we were to find the trial court violated section 1138, we find defendant has failed to make the necessary threshold showing of prejudice.

We conclude the trial court did not err in its procedure for handling the jury's request for a readback of defendant's testimony.[3]

## 2. Custody Credits

Defendant argues the trial court erred in finding he was not entitled to presentence custody credits. The People concede this point. We agree with the parties and find defendant is entitled to 265 days of presentence credits.

On April 23, 2013, in case BF147747A, defendant pleaded no contest to possession of a controlled substance, a felony (Health & Saf. Code, § 11377, subd. (a), count 1) and driving a motor vehicle with a suspended or revoked license, a misdemeanor (Veh. Code, § 14601.1, subd. (a), count 2). Defendant was sentenced to three years on count 1 and one year for a prior prison term enhancement. He was given a four-year split

---

[3]Defendant argues the trial court also violated section 1142, which provides: "While the jury are absent the court may adjourn from time to time, as to other business, but it must nevertheless be open for every purpose connected with the cause submitted to the jury until a verdict is rendered or the jury discharged."

The trial court here was briefly detained attending to other court business while the jury was deliberating, this is precisely what section 1142 sanctions. Thus, we find no violation.

9.

sentence pursuant to section 1170, subdivision (h), consisting of two years in custody in the Kern County jail, and two years on mandatory supervision.

Thereafter, on July 3, 2013, defendant was released from jail on sheriff's parole, an early release program offered to eligible inmates authorized under section 3074 et seq. He was on sheriff's parole at the time of his arrest for the instant offense of receiving stolen property in August of 2013. At sentencing in this case, the trial court adopted the findings of the probation report, which concluded defendant committed the present offense while "serving the custodial portion of his mandatory supervision" for his 2013 prior conviction in case BF147747A.

Under section 2900.5, subdivision (b), "[a] defendant is not entitled to presentence custody credits when he or she is charged with a crime while already incarcerated and serving a sentence on a separate, earlier crime." (*People v. Gisbert* (2012) 205 Cal.App.4th 277, 281.) Thus, this issue turns on whether defendant was "in custody" within the meaning of section 2900.5, subdivision (a) after he was released from incarceration on sheriff's parole. We conclude he was not.

Section 2900.5, subdivision (a) states the following, in relevant part:

> "In all felony and misdemeanor convictions, … when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, … shall be credited upon his or her term of imprisonment …."

"Custody," against which sentence credit is statutorily available, involves regulation of behavior or a supervised and structured lifestyle. (*People v. Reinertson* (1986) 178 Cal.App.3d 320, 327.) While parole involves a degree of supervision and regulation of behavior, a defendant who is released on parole is not "in custody" within the meaning of section 2900.5. (*Charry v. California* (9th Cir. 1994) 13 F.3d 1386, 1390.) This is because "a person on parole usually suffers little physical restraint and has

10.

conditional freedom" compared to an individual within a facility, such as jail or prison (*ibid*.), or an individual under home detention or an electronic monitoring program.

At the time of his arrest for the instant offense, defendant was on sheriff's parole. The requirements under sheriff's parole are similar to the requirements imposed under other parole programs: parolees are prohibited from associating with known parolees or gang members, they must seek employment, keep parole officers informed of their whereabouts, consent to searches, and refrain from using alcohol and illegal drugs.[4] Ostensibly, the supervision and restriction of freedom under sheriff's parole is significantly less than what is imposed under confinement in a facility, home detention, electronic monitoring, or even work release. Thus, defendant was not in custody within the meaning of section 2900.5, subdivision (a) when he committed the instant offense.

On this basis, he is entitled to custody credits provided the "'the conduct [that] led to [his] sentence was a dispositive, or "but for," cause of [his] presentence custody.'" (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 392; see *People v. Bruner* (1995) 9 Cal.4th 1178, 1181-1182 [defendant not entitled to presentence credits where confinement was attributed to commission of new crime, but parole revoked on separate and unrelated grounds].)

Although defendant was sentenced concurrently for the instant offense and for violating his parole as a result of the offense, it appears he was in custody from the date of his arrest on August 27, 2013, until the date of sentencing on January 6, 2014, solely as a result of the instant offense and not on separate and unrelated grounds. Thus, he is entitled to custody credits.

---

[4]After notice to the parties, we take judicial notice pursuant to California Rules of Court, rule 8.252(a), and Evidence Code sections 459 and 452, subdivision (h), of the requirements of sheriff's parole on the Kern County Sheriff's Office Web site: <http://www.kernsheriff.com/Detentions/Lerdo/VJ/Parole/Pages/default.aspx> (as of Mar. 11, 2016).

The calculation of custody credits begins on the day of arrest and continues through the day the defendant is sentenced. (§ 2900.5, subds. (a), (d).) Therefore, he is entitled to 133 days of custody credits.

Defendant is also entitled to conduct credits. Under section 4019, conduct credits accrue at a rate of two days for every four days of actual time served. Defendant served 133 actual days in custody and is, therefore, entitled to 132 days of conduct credits.

We order the judgment modified to reflect the following: defendant shall receive 265 days of presentence credits.

### 3. Defendant's 2013 Prior Conviction

Defendant argues:

> "If this court affirms the denial of presentence credits on the ground defendant was still in custody on the 2013 prior at the time he committed the new offense, then it should strike the one-year term imposed for the 2013 prior. [¶] … [¶]

> "The People cannot have it both ways. If defendant was *not* in custody at the time of the new offense in August 2013, then he is entitled to presentence credits. If he *was* in custody, then the true finding on the 2013 prison term prior must be reversed and the one-year consecutive term based upon it must be stricken."

As noted in part 2, we agree defendant was not in custody at the time he committed his new offense in August 2013, and he is entitled to presentence credits.

Oddly, the People assert that under section 667.5, subdivision (d), defendant had not suffered a prison prior under section 667.5, subdivision (b) in case BF147747A. It is difficult to follow the People's argument, so rather than paraphrase it, we quote directly from the Respondent's Brief:

> "It appears to [the People] that the true finding on the … section 667.5, subdivision (b), allegation pertaining to case no. BF147747A must be reversed whether or not [defendant] is entitled to presentence custody credits in this case. The record seems clear that, at the time of his commission of the instant offense, [defendant] was on 'sheriff's parole' and/or mandatory supervision in case no. BF147747A. [Citations.] And … section 667.5 provides in pertinent part as follows:

12.

"'(d) For the purposes of this section, the defendant shall be deemed to remain in prison custody for an offense until the official discharge from custody, including any period of mandatory supervision, whichever first occurs, including any time during which the defendant remains subject to reimprisonment or custody in county jail for escape from custody or is reimprisoned on revocation of parole or postrelease community supervision....' (... § 667.5, subd. (d), as amended by Stats. 2012, ch. 43 (SB 1023), § 22, eff. June 27, 2012.) Under the plain language of ... section 667.5, subdivision (d), it seems clear that so long as the defendant is subject to reimprisonment, the defendant does not have a 'prison prior' based on the term he is then serving. Accordingly, if the defendant reoffends while on 'sheriff's parole' and/or mandatory supervision—as [defendant] did here—he is not subject to an enhancement in the new case under ... section 667.5, subdivision (b), for the term he is then serving on 'sheriff's parole' and/or mandatory supervision."

There are at least two major flaws in the People's argument. First, the People have misquoted section 667.5, subdivision (d) by leaving out two qualifying phrases, so the attempt to apply the plain meaning rule is a nonstarter.[5] Below we quote the relevant part of section 667.5, subdivision (d) and italicize the language missing from the People's quotation:

In 2013, at the time of defendant's offense, section 667.5, subdivision (d) provided in relevant part:

"For purposes of this section, the defendant shall be deemed to remain in prison custody for an offense until the official discharge from custody, including any period of mandatory supervision, *or until release on parole or postrelease community supervision*, whichever first occurs, including any time during which the defendant remains subject to reimprisonment or custody in county jail for escape from custody or is reimprisoned on revocation of parole or postrelease community supervision." (Italics added.)

As we explain below, the second flaw in the People's argument is the attempt to apply subdivision (d) of section 667.5 to the circumstances in this case to determine

---

[5]During oral argument, counsel for the People was informed of the misquotation in her brief and was asked if her argument or analysis would change based on the actual language in the statute. Counsel responded her position remained unchanged.

13.

whether defendant suffered a prior prison term in case BF147747A under section 667.5, subdivision (b). Established case law reveals the flaw in the People's argument.

A sentence enhancement pursuant to section 667.5, subdivision (b)[6] requires the defendant: (1) have a prior felony conviction; (2) be imprisoned as a result of the prior conviction; (3) complete the term of imprisonment; and, (4) not remain free for five years from the prior imprisonment and commission of the new offense that also results in a felony conviction. (*People v. Tenner* (1993) 6 Cal.4th 559, 563.)

The issue here is whether defendant completed the term of imprisonment for his 2013 prior conviction (case BF147747A). If a defendant is serving a sentence for a prior offense during the commission of a new offense, a true finding on a prior prison term enhancement as a result of the prior offense must be reversed. (*People v. Weeks* (2014) 224 Cal.App.4th 1045, 1047, 1051 [defendant had not completed prior prison term used to enhance sentence because he was still incarcerated for the prior offense at the time he committed the new offenses].)

In *People v. Tenner*, *supra*, 6 Cal.4th 559, the issue presented also involved "the sufficiency of proof of the third element: defendant's completion of a prior prison term."

_____

[6]In 2013, section 667.5, subdivision (b) provided in pertinent part: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] … [¶] (b) [W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony; provided that no additional term shall be imposed under this subdivision for any prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended. A term imposed under the provisions of paragraph (5) of subdivision (h) of Section 1170, wherein a portion of the term is suspended by the court to allow mandatory supervision, shall qualify as a prior county jail term for the purposes of the one-year enhancement."

As can be seen, prior jail terms imposed pursuant to subdivision (h) of section 1170 are the equivalent of prior prison terms for use as sentence enhancements pursuant to section 667.5.

14.

(*Id*. at p. 563.)  The court found three necessary elements for proof of a completed term: (1) physical commitment to prison; (2) service of the sentence; and (3) release from prison.  (*Ibid*.)  Where the evidence shows the defendant was committed into prison custody, the sentence was served, and the "defendant was out of custody when he committed the later offense, [it] support[s] a finding that defendant completed a prior prison term.  [A] defendant properly sentenced and delivered to prison will, as a practical matter, always complete a prison term unless something unusual occurs."  (*Id*. at p. 566.)

Here nothing unusual occurred, such as an escape from custody.  Instead, the evidence established defendant's release from jail custody was as a result of being placed on sheriff's parole.

Subdivision (d) of section 667.5, on the other hand, relates to the fourth prong of determining whether a prior prison term enhancement applies.  (*In re Kelly* (1983) 33 Cal.3d 267, 274, overruled on other grounds by *People v. Langston* (2004) 33 Cal.4th 1237, 1246.)  It is an exemption to imposition of the enhancement commonly referred to as the "wash out period."  (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)  Under the exemption, a defendant who has served a prison prior within the meaning of section 667.5, subdivision (b), but who has remained continuously free from prison custody and who has not committed new felonies for a five-year period is not subject to the enhancement if he or she reoffends.  (*In re Preston* (2009) 176 Cal.App.4th 1109, 1115.)  Accordingly, where a defendant is released on parole but reoffends, causing the defendant's parole to be revoked, the washout period does not begin until the defendant is subsequently discharged from custody or completes parole without revocation.  (*Id*. at p. 1117.)

The issue before us is not whether defendant's 2013 prior offense "washed out."  Plainly, because defendant did not successfully complete parole for his prior offense nor had the requisite five-year time period elapsed, it did not wash out.  Thus, subdivision (d) of section 667.5 is not relevant here.

15.

The issue here is whether defendant, who is incarcerated on both a parole revocation and a new offense, is subject to a section 667.5, subdivision (b) enhancement based on the offense for which he was on parole. Case law makes clear that defendant is not insulated from imposition of a prior prison term enhancement simply because he was on parole when he committed a new offense and was sentenced concurrently for parole revocation and the new offense. (See *In re Kelly*, *supra*, 33 Cal.3d 267; *People v. Langston*, *supra*, 33 Cal.4th 1237; *People v. Espinoza* (1979) 99 Cal.App.3d 59; *People v. Welge* (1980) 101 Cal.App.3d 616; *People v. James* (1980) 102 Cal.App.3d 728.)

Our Supreme Court considered a similar issue in *Kelly*. (*In re Kelly*, *supra*, 33 Cal.3d at p. 269.) In *Kelly*, the defendant argued a prior separate prison term within the meaning of section 667.5, subdivision (b) is not completed until all time for a parole revocation is served. (*Id*. at p. 273.) Under the defendant's theory, when a defendant is concurrently sentenced for the commission of a new offense and for a parole revocation, a section 667.5, subdivision (b) enhancement cannot be imposed based on the offense for which defendant was on parole.

The court rejected this argument, explaining that under section 667.5, subdivision (g), a prior prison term is only considered continuous where a defendant has violated his or her parole and is sent back to prison solely for the parole violation. (*In re Kelly*, *supra*, 33 Cal.3d at pp. 270-271.) Under such circumstances, the defendant is still serving time for the prior offense, and the defendant's sentence cannot be enhanced based on the prior offense. (*Ibid*.) However, if a defendant is sentenced concurrently for a new offense and for a parole violation, the prior conviction is considered separate and may be used to enhance the new sentence. (*Ibid*.)

To interpret section 667.5 as the parties suggest would result in absurdity. An individual who successfully completes parole without revocation would have completed his or her prior prison term and would be subject to the sentence enhancement upon conviction of a subsequent felony within five years. (*People v. Espinoza*, *supra*, 99

16.

Cal.App.3d at pp. 73-74.) However, if the same individual committed a new felony offense while on parole, he or she would not be subject to the prior prison term enhancement. (*Ibid.*) Not only would the foregoing interpretation produce an illogical result, it would conflict with the fundamental purpose of the enhancement: to punish hardened criminals who are undeterred by the fear of prison. (*In re Preston, supra*, 176 Cal.App.4th at p. 1115.) Certainly, a defendant who commits a new felony offense while on parole for the commission of a prior felony offense is undaunted by the threat of imprisonment. Indeed, defendant here "is just the sort of example that the Legislature had in mind when it set up its scheme to inflict additional punishment for repeat offenders." (*In re Kelly*, *supra*, 33 Cal.3d at p. 272.)

We conclude the trial court did not err in imposing a prior prison term enhancement based on defendant's 2013 prior conviction.

## DISPOSITION

The trial court is ordered to prepare an amended abstract of judgment with service to all appropriate agencies to reflect the following modification: defendant is awarded 133 days of actual custody and 132 days of conduct credit for a total of 265 days of presentence credits.

In all other respects, the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
GOMES, Acting P. J.


_____
FRANSON, J.

17.